# United States District Court

SOUTHERN DISTRICT OF FLORIDA

FILED by D.C.
APR 26 2000
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

UNITED STATES OF AMERICA

V.

JOEL HERNANDEZ-CASTELLANOS

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4089-Snow

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From on or about April 20, 2000 to April 25, 2000 in Broward county, in the Southern District of Florida and elsewhere, the defendant attempted to import a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine

in violation of Title 21 United States Code, Section(s) 952 and 963

I further state that I am a(n) Special Agent and that this complaint is based on the following facts:
*Official Title*

Please see attached affidavit.

Continued on the attached and made a part hereof:  [x] Yes  [ ] No

Robert M. Catterton
Special Agent, United States Customs Service

Sworn to before me, and subscribed in my presence,

April 26, 2000            at   Ft. Lauderdale, FL
Date                            City and State

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE                    *Lurana S. Snow*
Name and Title of Judicial Officer                 Signature of Judicial Officer

<u>AFFIDAVIT</u>

I, Robert M. Catterton, having first been duly sworn, do hereby state and depose the following:

1. I am a Senior Special Agent with the United States Customs Service ("Customs"), and I have been so employed since 1987. Prior to that I was a state and local law enforcement Officer since 1974. The information in this affidavit is based on my personal knowledge and that of other law enforcement officers and agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause for arrest in this case, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause for the arrest in this case.

2. Joel HERNANDEZ-CASTELLANOS is a crew-member aboard the M/V Crown Princess.

3. On April 20, 2000, anonymous information was received on the ship's Drug Hot Line stating that HERNANDEZ-CASTELLANOS and another crewmember were involved in the trafficking of drugs.

4. On April 23, 2000, HERNANDEZ-CASTELLANOS' cabin was searched. During the search Security Officer Mervyn Griffiths discovered three padded garments in HERNANDEZ-CASTELLANOS' wardrobe. All three garments had individual pockets sewn in, each containing a small package. Security Officer Griffiths discovered 68 small packages which he suspected contained cocaine.

5. Security Officer Griffiths inquired as to where HERNANDEZ-CASTELLANOS obtained the packages. HERNANDEZ-CASTELLANOS stated that he obtained them at Puerto Limon, Costa Rica and was told to deliver them upon his arrival in Port Everglades, Florida.

6. The packages were secured in the captain's safe and HERNANDEZ-CASTELLANOS was placed under guard.

7. On April 24, 2000, the United States Customs Service was advised by Officers of the ship of the above-stated facts.

8. On April 25, 2000, the M/V Crown Princess arrived at Port Everglades, Florida. The ship was met by personnel from Customs, the Broward Sheriff's Office (BSO) and the Drug Enforcement Administration (DEA). A chemical field test was performed on the packages referenced in paragraph 4 and the substance tested positive for the presence of cocaine.

9. HERNANDEZ-CASTELLANOS was advised of his *Miranda* rights in Spanish by DEA Special Agent Jeanette Moran, witnessed by BSO Detectice Derstine and SSA Catterton.

10. HERNANDEZ-CASTELLANOS stated that on April 20, 2000, he met a person named "Mauricio" on the docks in Puerto Limon, Costa Rica. He went with "Mauricio" to a bar located near the dock. "Mauricio" asked him to bring two kilograms of cocaine into the United States for delivery in Port Everglades, Fort Lauderdale. The cocaine had been placed in the pockets of garments which "Mauricio" gave HERNANDEZ-CASTELLANOS and HERNANDEZ-CASTELLANOS wore the garments underneath his clothing before he returned to the vessel. "Mauricio" told him that he would get $2,000.00 for delivering the cocaine to the United States. "Mauricio" told HERNANDEZ-CASTELLANOS that when he arrived in the United States, HERNANDEZ-CASTELLANOS should go to the Publix Supermarket located across the street from the "calling station" and he should wear his blue ball cap with the "Nike Swoosh" on the front. "Mauricio" then told him that he would be contacted by someone, who was not identified, in the parking lot. "Mauricio" instructed HERNANDEZ-CASTELLANOS that he was to exchange the cocaine for $2000, from this person.

WHEREFORE, I believe there is probable cause to believe that Joel HERNANDEZ-CASTELLANOS did knowingly and intentionally attempt to import into the United States, from a place outside thereof, a controlled substance, to wit: cocaine, in violation of Title 21, United States Code, Sections 952(a) and 963.

FURTHER AFFIANT SAYETH NAUGHT.

ROBERT M. CATTERTON
SENIOR SPECIAL AGENT
UNITED STATES CUSTOMS SERVICE

Sworn and subscribed before
me this 26 day of April, 2000.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE